UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-cv-00837-WO-JLW

| | |
|---|---|
| NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, <br><br> Plaintiff, <br><br> v. <br><br> ALAN HIRSCH, et al., <br><br> Defendants. | **STATE BOARD DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

**NOW COME** Defendants Alan Hirsch, Jeff Carmon, Stacy Eggers, IV, Kevin N. Lewis, Siobhan O'Duffy Millen, and Karen Brinson Bell (collectively, the "State Board Defendants") to provide this Response to Plaintiff's Motion for Preliminary Injunction. [D.E. 33, 34].

### Nature of the Matter Before the Court

Plaintiff, North Carolina Alliance For Retired Americans, filed the present action on October 2, 2023, challenging the requirement in N.C.G.S. § 163-55(a) that to be eligible to vote in a particular precinct in this State, an individual must reside in the State and in that precinct for thirty days prior to the election. [D.E. 1]. Plaintiff alleges that section 163-55(a) violates section 202 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10502(c), as well as the First and Fourteenth Amendments to the United States Constitution. [D.E. 1 at ¶¶ 45-59]. With the Motion for Preliminary Injunction, Plaintiff seeks to enjoin section 163-55(a) on those bases. [D.E. 33, 34].

Plaintiff's Motion for Preliminary Injunction should be denied, because they cannot demonstrate a likelihood of success on the merits and the balance of equities favors the State.

## Statement of Facts

**A. North Carolina's Residency Period for Voting**

The North Carolina Constitution provides the following regarding the residency period for voting in state elections:

> Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State. Removal from one precinct, ward, or other election district to another in this State shall not operate to deprive any person of the right to vote in the precinct, ward, or other election district from which that person has removed until 30 days after the removal.

N.C. Const. art. VI, § 2(1).

In section 2 of the VRA, as amended effective 1970, Congress "abolish[ed] the durational residency requirement as a precondition to voting for President and Vice President[.]" 52 U.S.C. § 10502(b). Accordingly, no citizen qualified to vote is to "be denied the right to vote" for President and Vice President; based upon that citizen's failure "to comply with any durational residency requirement of such State or political subdivision[.] *Id.* § 10502(c). Section 2 mandates that each state "provide for the registration . . . of all duly qualified residents of such State who apply, not later than thirty days immediately prior to any presidential election, for registration . . . to vote for the choice of electors for President and Vice President or for President and Vice President in such election[.]" *Id.*, § 10502(d). It also provides that

> [i]f any citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any election for President and Vice President has begun residence in such State or political subdivision after the thirtieth day next preceding such election and, for that reason, does not satisfy the registration requirements of such State or political subdivision he shall be allowed to vote for the choice of electors for President and Vice President, or for President and Vice President, in such election, [] in person in the State or political subdivision in which he resided immediately prior to his removal if he had satisfied, as of the date of his change of residence, the requirements to vote in that State or political subdivision[.]

*Id.* § 10502(d).

In 1972, the United States Supreme Court summarily affirmed a decision by a three-judge panel sitting in this district that concluded North Carolina's one-year residency period for voting as applied to local elections violated the United States Constitution's Equal Protection Clause. *Andrews v. Cody*, 327 F. Supp. 793, (M.D.N.C. 1971), *aff'd*, 405 U.S. 1034 (1972). Also in 1972, the Supreme Court struck down a state's residency requirement that to be qualified a voter had to live in that state for one year and in the county in which they were voting for three months. *Dunn v. Blumstein*, 405 U.S. 330 (1972). In so doing, the Court concluded that thirty days "appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud—and a year, or three months, too much." *Id.* at 348.

Although the North Carolina Constitution was never amended to reflect the Supreme Court's holding in *Andrews* or *Dunn*, shortly after those decisions, the General Assembly amended the statutory provision effectuating the state Constitution's durational residency requirement, N.C.G.S. § 163-55(a), by decreasing the requirement from one year

to thirty days. *See* N.C. Sess. Law 1973-793 (effective July 1, 1973). Today, that provision provides the following in pertinent part:

> Every person . . . who shall have resided in the State of North Carolina and in the precinct in which the person offers to vote for 30 days next preceding an election, shall, if otherwise qualified . . . , be qualified to vote in the precinct in which the person resides. Removal from one precinct to another in this State shall not operate to deprive any person of the right to vote in the precinct from which the person has removed until 30 days after the person's removal.

N.C.G.S. § 163-55(a).

### B. Voter Registration in North Carolina

In North Carolina, "[o]nly such persons as are legally registered shall be entitled to vote in any primary or election[.]" N.C.G.S. § 163-54. A person must register to vote by twenty-five days before election day. N.C.G.S. § 163-82.6(d). North Carolina offers multiple ways to register, including by mail, facsimile, email transmission of a scanned document, or in person. *Id.*, -82.6(a). Additionally, one may register in person through various state agencies. *Id.*, §§ -82.11; -82.12; -82.19; -82.20; -82.21; -82.22; -82.23.

As required by statute, the State Board of Elections has created a standard form for use by all individuals who wish to register to vote, irrespective of the method they use to register. *Id.*, §§ -84.3, -82.4.[1] The content of the form is largely dictated by statute. *See* N.C.G.S. § 163-82.4. On the form, registrants are required, among other things, to attest to their qualifications for voting, including that they "have lived at the residence identified on

---

[1] S*ee also* "North Carolina Voter Registration Application," available at https://s3.amazonaws.com/dl.ncsbe.gov/Voter_Registration/NCVoterRegForm_06W.pdf (last visited January 31, 2024), attached to Declaration of Counsel as Exhibit A.

th[e] form for 30 days before the date of the election in which [they] intend to vote[.]" Ex. A. As the form notifies registrants, "[f]raudulently or falsely completing [the] form is a Class I felony[.]" *Id.*; *see also* N.C.G.S. § 163-82.4(c) ("The form required by G.S. 163-82.3(a) shall contain, in uniform type, . . . [a] statement that specifies each eligibility requirement (including citizenship) and an attestation that the applicant meets each such requirement, with a requirement for the signature of the applicant, under penalty of a Class I felony under G.S. 163-275(13)"); *id.* 163-275(13) (providing it is a Class I felony "[f]or any person falsely to make or present any certificate or other paper to qualify any person fraudulently as a voter, or to attempt thereby to secure to any person the privilege of voting").

Since 2007, North Carolina has offered same-day registration as an additional opportunity for individuals to register even if they missed the standard registration cutoff of twenty-five days prior to election day. Session Law. 2007-230; *see also* N.C.G.S. § 163-82.6B ("Same-day registration"). Same-day registration begins not earlier than the third Thursday before an election and continues until 3:00 p.m. on the last Saturday before the election. N.C.G.S. § 163-166.40(b). In addition to satisfying other requirements, same-day registrants must complete the same voter registration form required by section 163-82.4, described above. N.C.G.S. § 163-82.6B(b)(1); *see also* Ex. A.

## **Legal Argument**

### Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

5

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

I. **Plaintiff Is Unlikely to Succeed on the Merits.**

Plaintiff is unlikely to succeed on the merits of its claim because, for the reasons stated by Legislative Defendants in Partis IV and V of their Response in Opposition to Plaintiff's Motion for a Preliminary Injunction, Plaintiff cannot establish section 163-55(a) violates section 202 of the VRA or the United States Constitution. [*See* D.E. 40 at 18-21]. In an effort to avoid unnecessary duplication of arguments and conserve the resources of all parties and the Court, State Board Defendants hereby adopt those parts of Legislative Defendants' PI Response as their own and incorporate them by reference as if set forth fully herein. *See id.*

II. **The Balance of Equities and the Public Interest Weigh Against Injunction.**

To obtain a preliminary injunction, a plaintiff must make a clear showing that they will likely be irreparably harmed absent such relief, that "the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. An averment that a plaintiff's harm might simply outweigh the defendant's is insufficient to tip the balance of equities in that plaintiff's favor. *Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

The Court must also give "particular regard" to the "public consequences" of any relief granted. *Id.* Where, as here, granting a preliminary injunction would necessarily impose administrative burdens, including in the form of the significant cost of reprinting voter registration forms, it also presents an irreparable harm because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

Plaintiff's allegations of irreparable harm are conclusory and therefore should be afforded little weight in determining where the equities lie. Moreover, Plaintiffs ignore that both the Voting Rights Act and North Carolina law allow voters who have moved within 30 days of the election to vote in their prior state using their prior address. 52 U.S.C. § 10502(e) (Requiring that a person who does not meet the registration requirements of their new state, may vote for President or Vice-President in their prior state.); N.C.G.S. § 163-55(a) (Requiring that a person who moves from one precinct to another in North Carolina remains eligible to vote their prior precinct for 30 days after they moved.) Thus, Plaintiffs have overstated the alleged harm that arises from the challenged law because the hypothetical voter will still be able to participate in upcoming elections, even if they are not yet eligible to vote at their new address.

Similarly, Plaintiff's delay in bringing this motion for preliminary injunction tips the balance of the equities against issuance of an injunction. *See Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (holding that a plaintiff's

"delay is thus quite relevant to balancing the parties' potential harms," since "a long delay in seeking relief indicates that speedy action is not required"); *Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 138 (4th Cir. 2001) ("Our decision in *Quince Orchard* instructs that any delay attributable to plaintiffs in initiating a preliminary injunction request, coupled with prejudicial impact from the delay, should be considered when the question of irreparable harm to plaintiffs is balanced against harm to defendants."). Here again, the challenged statute has been in effect for over fifty years, over the course of hundreds of elections and primaries. That Plaintiff seeks this preliminary injunction after such a long delay demonstrates that the balance of the equities does not require issuance of an injunction.

## Conclusion

For the reasons above, the State Board Defendants respectfully request that Plaintiff's Motion for a Preliminary Injunction be denied.

Respectfully submitted this the 6th day of February, 2024.

>NORTH CAROLINA
>DEPARTMENT OF JUSTICE
>
>/s/ Mary Carla Babb
>Mary Carla Babb
>Special Deputy Attorney General
>Email: mcbabb@ncdoj.gov
>N.C. State Bar No. 25731
>
>Terence Steed
>Special Deputy Attorney General
>Email: tsteed@ncdoj.gov
>N.C. State Bar No. 52809
>
>N.C. Department of Justice

Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6567
Facsimile: (919) 716-6763

*Counsel for State Board Defendants*

# CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)

Undersigned counsel certifies that the present filing is in compliance with Local Rule 7.3(d) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina including the body of the brief, heading and footnotes, and contains no more than 6,250 words as indicated by Word, the program used to prepare the brief.

Respectfully submitted this the 6th day of February, 2024.

       /s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General